## No. 13,352.

## MRS. MARIE J. FORTIER VS. SPENCER B. ROANE.

### SYLLABUS.

The east and west lines of the east 1-2 of Sec. 8, T. 14, S. R. 8 E., are correctly located.

The land in dispute as relates to eastern and western boundaries is within the limits of the area just described.

Plaintiff's dwelling and that of her son, not long after her purchase in 1858, were built about or near the points indicated by letters X and Y and at that locality she was entitled to an area of 80 58-100 acres by deed dated in 1858. Defendant's deed to same area dates from 1874. In matter of location. and area, he who is prior in time is stronger in right.

There is controversy about the north and south boundary of the land. On the south, viz: the Borrel, and Scott lines, it does not satisfactorily appear that there ever was a Borrel and Scott line, and if there was it never joined the land in controversy.

It does not appear satisfactorily who originally owned the lands north of and adjoining the land in controversy. The court holds that as plaintiff's vendor was the owner of eighty 58-100 acres near the dwellings in question, plaintiff is entitled to the area claimed, and that the defendant being a purchaser subsequent in date is not entitled to judgment ousting the plaintiff from lands in that locality.

Rental is allowed from judicial demand on lands actually in controversy.

O N APPEAL from the Twenty-Fourth Judicial District, Parish of St. Mary—*Allen, J.*

*D. Caffery & Son* and *J. Sully Martel* for Plaintiff, Appellee.

*Charles A. O'Niell* for Defendant, Appellant.

*Philip H. Mentz* for the Estate of Jules M. Burguieres, and the Estate of Emile Provost, Warrantors, Appellants.

The opinion of the court was delivered by

BREAUX, J.  Plaintiff brought this petitory action against the defendant for the ownership of lands described in her petition, and for rent thereon. She sets forth that the defendant holds adverse possession of this land without title.

This land was acquired by her from Leon David in 1893. The latter, Leon David, bought land at sheriff's sale January, 1892, which

includes, plaintiff avers, the land she claims. It appears that Pierre Maillard and N. Cerf acquired this land from the administrator of the estate of Pierre Cerf. The latter Cerf acquired land included in plaintiff's description from Hortense Borrel in 1882, and Hortense Borrel acquired land from William Doty, and William Doty acquired from Mrs. Charles Grevemberg in 1858.

In her petition, plaintiff describes the land she claims as a tract situated in Cypremort, Parish of St. Mary, measuring eighty and 58-100 acres; bounded north and east by land formerly belonging to Pierre Cerf, south by land owned by E. P. Scott and Pierre Borrel, and west by land belonging to Mrs. Charles Grevemberg.

In the deed introduced in evidence and under which plaintiff acquired the land, it is described as a tract or parcel of land in Cypremort Prairie, being lots three, four, and five of fractional N. W. 1-4 of Sec. 7, containing a superficial area of 63 and 69-100 arpents and the E. 1-2 of the N. E. 1-4 of Sec. 8, containing a superficial area of 55 and 58-100 arpents, in T. 14 S. of R. 8 in S. W. Land Dist. The whole containing a superficial area of 119 and 27-100 arpents and bounded on the north by the public road in part, and in part by land formerly owned by A. Moresi, on the east by land formerly belonging to A. Sorrel, on the south in part by lands formerly the property of Dr. E. P. Scott, and in part by lands formerly the property of Bres, and on the east by lands of S. B. Roane, said conveyed land being designated on a map as included within the lines marked A. B. C. D. and in the possession of the vendor.

The deed preceding in date the one to which we have just referred, that is the deed under which Leon David conveyed to plaintiff, embraces a larger number of acres than he conveyed to plaintiff. We will refer to this deed later.

The defendant claimed that he is the owner of land described by the survey made by Wm. W. Johnson, which, according to the United States Surveys, is described as being in lot one, Sec. 8, T. 14, S. R. 8 E., which he acquired from Burguieres and Provost on the 5th of October, 1886, and that they, in turn, acquired at public sale made in suit of Emile Prevost vs. Marie A Ferie, wife of A. Grevemberg, on October 2nd, 1886, and that the defendant in the last mentioned case held it as owner by a *dation en paiement* made to her by her

husband in 1874, and that her (Mrs. Grevemberg's) husband acquired this property from Mrs. Charles Grevemberg in 1874.

The title of plaintiff and that of defendant are derived from Mrs. Charles Grevemberg, who acquired the Kilgore plantation in 1855 within the limits of which was the lot now in controversy.

The judge of the District Court handed down a carefully written opinion and rendered judgment in plaintiff's favor recognizing her as owner of the land she claims and specifically described as lot one of the E. 1-2 of Sec. 8, T. 14, S. R. 8 E. lying within the lines lettered A. B. C. D. on the map of W. W. Johnson, surveyor, dated August 3rd, 1897, received and filed August 3, 1897, and also rendered judgment for rent at four dollars per acre per annum, from January 22nd, 1894. From this judgment, defendant appeals.

At the outset, we state that there is really no conflict of title between plaintiff and defendant, save as to a limited area of land. In order completely to present the issues to the court, the argument at bar and the briefs embraced other titles and other land areas than those actually in controversy. At first, this created the impression that considerably more area is involved than there really is in dispute. The recitals in plaintiff's deed includes all the area indicated by the letters A. B. C. D. of the Johnson Survey. This embraces an area altogether of 119.27 arpents.

Plaintiff in suit claims 80 and 58-100 acres. In his answer, defendant claims lot No. 1 in Section 8, T. 14, R. 8 E., and from the argument the quantity, we judge, is considerably less. It is limited to the land included within the figure E. K. A. V.

We take it that at least the line I. N. of the survey, that is, the dividing line of section 7 and section 8 is correctly located, and that the parallel line D. M. also was correctly located. We, therefore, have before us (undisputed) the eastern and western boundaries of lot one. That the lots ten and eleven, between these two lines, are owned by Bres is also undisputed.

We insert here a cut of the map introduced in evidence.

Mrs. Grevemberg, ancestor in title of both plaintiff and defendant, in 1858, in an exchange conveyed the land in dispute to William Doty, measuring, as stated in the deed of exchange, eighty and 58-100 acres, bounded north and east by land belonging to Cerf. In the same year, he, Doty, in turn, conveyed this land to Mrs. Eugenie Borrel, who went into possession. She constructed her dwelling house on the east of a small stream of water or coulee. This part of lot one beyond question was owned by Mrs. Eugenie Borrel. Defendant testifies that north, plain-

tiffs' lands are bounded by those of Cerf. We do not take it that he claims any land between Mrs. Borrel and Cerf on the north. Be that as it may, the controversy reduces itself to the land within the figure E. K. A. V. If this be correct, then we must arrive at the conclusion that there is a deficiency of more than forty acres in the Borrel tract or Doty tract This, the defendant contends for, and she says that the surveyor has endeavored to explain it by extending the lines south of line A. B. and thereby taking in part of the Bres tract to which Mrs. Charles Grevemberg never had any title. This is true, and the surveyor by whom these tracts were surveyed, adopted the theory that the eighty 58-100 acres of land given by Mrs. Grevemberg in the exchange with William Doty for lot 6 of section 8 represented by the figure E. F. G. H. consists of south half of lot 10 of Sec. 8 (the Bres land). This is also the view of the opinion upon which the judgment appealed from is asked. Our view is different, although our conclusion is practically the same. We, on the contrary, are of the opinion that Mrs. Borrel was entitled to her quantity of land stated in the deed to her and which her vendor had bought from Mrs. Grevemberg. Lot one contained the number sold. The description was given more or less correctly, except as to the southern boundary. The owners of the land south of the tract conveyed by Mrs. Grevemberg were not Borrel and Scott. There is evidently an error. If that boundary be adopted as correct, then Mrs. Grevemberg received lot 6 of Sec. 8 and undertook to convey therefor land which she did not own. On the other hand, all the other boundaries indicate that lot one was intended. This vendor owned the number of acres at this place which she sold. The number of acres sold corresponds with the number she owned. She could not sell that number of acres of land in the locality without selling lot one.

In 1874 she did, it is true, include this lot one in a conveyance made of it to her son, Agricole Grevemberg. There were no boundaries given and lot one was included with other numbers of lots of land she sold to him. Had boundaries been given, it may be that the error would have been detected. Be this as it may, she could not legally convey the same property a second time. We are not of the opinion that the land was owned by Cerf as stated in the opinion of our worthy brother of the District Court. If it was, the title is anterior to defendant's title or that of his ancestor in title, Mrs. Grevemberg.

Defendant insists that lot one is not the tract of land transferred by

Mrs. Grevemberg and will have it that it is not, because, as he contends, the ancestors in title of plaintiff have all acknowledged that lot one belonged to the Kilgore plantation; that, for example, in the sale to Joseph David in 1887, the lots four and five of section seven were sold as being bounded on the west by William Kilgore and that the land west is lot one of section eight.

This would exclude plaintiff and all her ancestors in title from ownership of any part of lot one. It will be noticed that lots four and five bound lot one completely on the east, and this would go to show that Mrs. Eugenie Borrel was on the Kilgore plantation and not on the land she bought from Doty. We think it is manifest that Kilgore having been the owner for so many years that the owners of adjacent land continued to designate the western boundary by the name of the plantation, although the owner had long previously parted with the ownership.

This brings us to the questions of estoppel and prescription. The estoppel is based on the defendant's averment that plaintiff, through her husband as agent, made a demand from respondent to remove the boundaries dividing her land from defendant's; that without admitting the justness of her claim, he consented to an amicable adjustment and new boundaries were agreed upon. It does not appear in our view of the testimony that plaintiff's husband was her agent, or that she is concluded from asserting her claim to her lands.

As regards the prescription of thirty years, we do not think that it is sustained by the testimony. Plaintiff was in possession of nearly all the land when the first survey was made. We have not found that the portion of which she did not have the possession was in the possession of defendant a sufficient number of years to give her prescriptive title. As relates to rent, we have concluded to affirm the judgment as to the amount at four dollars per annum per acre, but to amend the judgment so as to allow rental from judicial demand.

It is ordered, adjudged and decreed that the judgment appealed from be affirmed as to the amount of the rental; that is at four dollars per annum per acre from judicial demand, i. e., Sept. 1, 1897, on 13.60 acres land actually in controversy.

It is further ordered, adjudged and decreed that the judgment be further amended by recognizing defendant's ownership to one acre and a half of the land in lot one bought by defendant from plaintiff, i. e.,

the crescent. shaped tract of land which defendant acquired in ex-
change for a certain boiler and engine.

With these amendments, the judgment appealed from is affirmed at
appellee's costs.